### HINMAN et al. v. VISIBLE MILKER CO., Inc.

#### (District Court, N. D. New York. February 19, 1916.)

1. PATENTS ⬡⟳328—VALIDITY AND INFRINGEMENT—COW-MILKING APPARATUS.
    The Hinman & Hinman reissue patent, No. 13,876 (original No. 1,097,-803), for a cow-milking machine, claims 11 to 21, inclusive, are within the specification and drawings of the original patent, were not anticipated, and disclose a marked and patentable improvement on the prior art; also, *held* infringed.

2. PATENTS ⬡⟳167(1)—VALIDITY—CORRECTION OF DRAWINGS.
    The correction by the Patent Office of the drawings in a patent application to correctly show the invention described in the specification does not invalidate the patent granted thereon.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. ⬡⟳167(1).]

3. PATENTS ⬡⟳235—INFRINGEMENT—INFERIOR STRUCTURE.
    A patent cannot be evaded or infringement avoided by a construction, which is substantially the same, and which operates on the same principle, but which is inferior in its operation and produces an inferior result.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 371; Dec. Dig. ⬡⟳235.]

In Equity. Suit by Arthur V. Hinman, Ralph L. Hinman, and the Hinman Milking Machine Company, against the Visible Milker Company, Incorporated, for infringement of reissued letters patent No. 13,876 for a cow-milking machine, issued to complainants Hinman February 9, 1915. On final hearing. Decree for complainants.

R. H. Woolver, of Oneida, N. Y., and Howard P. Denison and Eugene A. Thompson, both of Syracuse, N. Y., for complainants.

John Conboy, of Watertown, N. Y., and Fred Gerlach, of Chicago, Ill., for defendant.

RAY, District Judge. [1] The patent in suit dated February 9, 1915, for a cow-milking machine, is a reissue of United States letters

patent No. 1,097,803, dated May 26, 1914, on application filed July 26, 1912. The application for the reissue was filed December 11, 1914. The original patent contained 11 claims. The reissue contains 22 claims. The defendant contends, among other things, that the reissued letters patent are greatly and unduly enlarged so as to constitute a patent for an alleged invention neither described nor claimed in the original letters patent. At the trial the plaintiffs elected to rely upon and limit the charge of infringement to claims 11 to 21, inclusive, of the reissue. The claims read as follows:

"11. In a cow-milking apparatus, a milk chamber having a valveless inlet, means for exhausting air from the chamber and a substantially air-tight valved outlet closed by gravity and the exhaust of air from said chamber.

"12. In a cow-milking apparatus, a milk chamber having a valveless milk inlet, an air exhaust connection, a milk outlet and an outlet valve positioned outside said chamber and closed by gravity and the exhaust of air from said chamber.

"13. In a cow-milking apparatus, a milk chamber having a valveless milk inlet, an air exhaust connection, a milk outlet, a valve for said outlet, and means located outside the milk chamber for supporting said valve.

"14. In a cow-milking apparatus, a milk chamber having a valveless milk inlet, an air exhaust connection, a milk outlet, a valve for said outlet, said valve positioned outside the milk chamber, and means located outside the milk chamber for supporting said valve.

"15. In a cow-milking apparatus, a milk chamber having a valveless milk inlet, an air exhaust connection, a milk outlet, a valve for said outlet, said valve positioned outside the milk chamber, and means located outside the milk chamber for supporting said valve in position to be brought into air-tight relation with the milk outlet by the exhaust of air from said chamber.

"16. In a cow-milking apparatus, a milk chamber having a milk inlet in substantially continuous communication with said chamber during the milking operation, a milk outlet and a valve for said outlet, said valve supported by means located entirely outside the milk chamber.

"17. In a cow-milking apparatus, a milk chamber having a milk inlet, an air exhaust connection, a milk outlet, a valve for said outlet, said valve supported by means located outside the milk chamber and adapted to discharge milk into a receptacle at substantially normal atmospheric pressure.

"18. In a cow-milking apparatus, a tubular member constituting a milk chamber and formed of two separate parts removably connected together, said parts having their adjacent edge portions adapted to be spaced apart, milk inlet and air exhaust connections with said chamber, and a valved outlet for said chamber.

"19. In a cow-milking apparatus, a milk chamber comprising two separate removably connected members having parts adapted to be normally spaced for receiving between them the cover of a milk receptacle, a milk inlet, an air exhaust connection, and a valved outlet.

"20. In a cow-milking apparatus, a milk chamber formed of a tubular body section and a cap removably connected thereto, a milk inlet and an air exhaust in connection with the cap, a milk outlet in connection with the body portion, a valve for said outlet, said valve located outside said chamber and adapted to be brought into substantially air-tight relation with said outlet by the exhaust of air from said chamber.

"21. In a cow-milking apparatus, a milk chamber having a valveless milk inlet, a valveless unobstructed air exit, and a valved outlet for the milk."

Claims 12 to 21 are new claims not found in the original patent, and claim 11 differs somewhat from claim 11 of the original patent. The patent was issued to Arthur V. Hinman and Ralph L. Hinman, complainants herein. The complainant Hinman Milking Machine Company is a licensee of the patentees. The defenses are:

"First. The claims are either wholly or substantially anticipated by the prior art patents.

"Second. Inasmuch as the relied-upon claims define nothing more than old and well-known details, shown to have been old and well known by many prior patents, applied to the device shown in plaintiff's prior patent No. 907,236 (Ex. 2), several thousand of which went into successful use, said claims do not define a patentable invention.

"Third. The relied-upon claims added by reissue are for a different invention from that intended to be claimed by the original patent, and therefore void under the law.

"Fourth. The original patent was not inoperative or invalid, and there being no lawful ground for reissue, the reissue is void.

"Fifth. Defendant's device does not infringe."

The patentees say in their specifications:

"This invention relates to improvements in vacuum cow-milking machines of the valved milk chamber type, its object being to improve and simplify their construction and to provide an exceedingly simple, readily operated, easily cleaned, noiseless and highly efficient apparatus of that class for milking one cow, or a number of cows simultaneously.

"At present in machines of this type there is no way of automatically controlling the vacuum, so that with each pulsation of the piston of the air pump the entire contents of the milk chamber are emptied; and there is no way to prevent the milk from entering at some point the center of the milk chamber during the milking stroke of the pump; and no way of preventing a portion of the milk being drawn from the milk chamber into the flexible tube connected with the pump, and even into the pump itself.

"Our invention is mainly designed to overcome these defects by providing an improved and simpler apparatus and accessories. * * *

"More especially the invention resides in the provision of a cow-milking apparatus, in which the hose leading from the suction pump is connected by means of a nipple to a milk chamber capable of being closed air-tight, and opened by an automatic valve at its lower end, which valve is closed by gravity and atmospheric pressure during the out stroke of the pump piston, and which is opened during the in stroke of the pump piston by the weight and pressure of the milk against it as it is discharged from the milk chamber, the milk having previously been drawn thereinto upon the out stroke of said pump piston; thus permitting the apparatus to be attached to the cover and used in connection with any receptacle of ordinary construction, without the necessity of providing a special air-tight covering for the same.

"The milk chamber may consist of two parts, a head or perpendicular part, and a body or curved part, easily joined together so as to form a unitary chamber, and easily separated for the purpose of cleaning, said parts having laterally projecting spaced flanges adapted to receive between them a portion of a milk pail cover. The body of the milk chamber may consist of two or more curved tubular parts, with a common upper part capable of being attached to the lower part of the head, and with two or more lower openings closed by automatic valves, instead of consisting of one curved part with one valve, the several valves being opened by the pressure and weight of the out-flowing milk, and closed by their own weight and by atmospheric pressure."

This invention relates to that class of milking machines spoken of as the "valve chamber type." It has a small tubular valved milk chamber adapted to be associated with an ordinary pail and to remain in a stationary condition while the milking operation goes on. In this chamber the vacuum is created for drawing the milk from the cow, and thus rendering unnecessary the use of a specially constructed vacuum pail and a specially pulsating apparatus such as was found in the milking machines commercially known before the Hinman invention and in which the vacuum is created in the milk pail itself.

The Hinmans sought to produce, and did produce, a device in which the milk is drawn into a stationary chamber from which the milk is discharged into an ordinary pail at atmospheric pressure and the pulsations are produced by an ordinary small reciprocating pump. The milk is not, at any time, drawn into the pump chamber and cannot come in contact with the vacuum producing piston or bellows. When that occurs, the milk is either contaminated or destroyed. The Hinmans sought to produce, and did produce, a device in which the suction upon the teats of the cow are realized at alternate strokes of the pump piston, and they produced a device easily cleaned and sanitary, in which the milk chamber is unobstructed by moving parts or otherwise, and which is easily and quickly kept clean. The vacuum is gradually produced upon the out stroke of the pump piston and is gradually applied to the milk chamber, to the teat cups, and teats of the cow. This is a great advantage, as the abrupt application of the vacuum makes a milking machine practically useless. This device is highly efficient and is adapted to be readily associated with a special milk pail cover so that the pail may be closed while the milking of the cow proceeds, and the air exhaust and milk inlet may be disposed outside the pail for operative connection with the pump teat cups, while the valved milk outlet is within the pail and in actual operation and the milk is or may be discharged through the cover of the pail. This device and structure is simple as compared with the prior art, and there is an absence of complicated mechanism.

The milk chamber comprises a tubular structure closed at its upper end and open at its lower end to permit the discharge of the milk therefrom. This lower open end is provided with a normally closed valve positioned outside the milk chamber and is supported by means outside the milk chamber, and as a result the milk chamber is in no way obstructed and all this tends to a sanitary condition. This valve closing the lower end of the milk chamber is closed normally by gravity. The upper closed end of this milk chamber has a tubular air exhaust nipple for connection with a suitable air exhausting pump which is at all times in connection with the chamber as the nipple is unobstructed by valves or other parts. The upper portion of the chamber is provided, also, with a tubular milk inlet nipple adapted to be connected by means of a flexible hose to teat cups, which are at all times in continuous communication with the milk chamber, as the milk inlet nipple is entirely unobstructed by valves or moving parts, and in effect the pump is at all times in continuous communication with the teat cups. This milk chamber is adapted to be placed in position in a stationary manner upon a receptacle for receiving the milk. The outlet valve automatically operates, and the construction and arrangement is such that the movement of the cow will not throw the milk into the air exhaust connection as the pump had done in prior devices.

In the reissued letters patent, there is a new sheet of drawings, viz., sheet 1, and this was inserted for the purpose of showing the apparatus set up and ready for use, and is illustrative merely, and shows the valve chamber assembled in operative position with a pump supported upon stanchions and with suitable hose and teat cups. This

disclosure is clearly enough described in the original specifications, where the nipples are described as connected to a hose leading to the pump and another hose leading to the teat cups, and the valve chamber is described as being a development and improvement of the invention shown in the specifications of a prior Hinman patent, No. 907,236. The teat cups, the pump, the stanchions, and the pump operating means are not included in the claims of the patent and are illustrative merely. The addition of this sheet of drawings in no way affects the validity of the reissue or of the claims in issue.

In the specifications of the reissued letters patent will be found the following, viz.:

"The upper end of $C$ is provided with a laterally and circumferentially extending flange $c$ spaced in the assembled structure a sufficient distance from the flange $d$ to receive between them a portion of a milk pail cover $f$. In the operation of assembling the device, the upper end of the part $C$ is thrust through an opening in the pail cover until the flange $e$ contacts with the cover. The cap $B$ is then screwed upon the body $C$ until the flange $d$ comes in contact with the pail cover, at which point the parts $B$ and $C$ are brought into such relative position as to form a smooth interior milk spreading surface."

This language is not found in the specifications of the original letters patent, but in the file wrapper of the original patent we do find the following:

"The lower end of the head provided with a thread and outside shoulder to engage the upper end of the body, the upper end of the body provided with a thread and outside shoulder to engage the lower end of the head, so that, when joined, the interior surface of the head and body form one continuous interior surface. * * *

"In a cow-milking apparatus, the combination of an air pump, a series of teat cups, a curved elbow shaped cylinder $A$ composed of two parts, a cylindrical head $B$ and a curved cylindrical body $C$ easily joined together by screw threads."

This part of the device or structure is therefore made more specific and definite, and I think was allowable in view of the fact that there are no intervening rights. There was put in evidence a rough outline drawing of the device made by Mr. E. J. Brown, of Oneida, at the request of the patentees. Mr. Brown was unskilled in patent drawings or specifications, and he also prepared a specification describing the drawing which he had made. The drawings did not coincide with the specification, but they were forwarded to the Patent Office and received June 24, 1912. The Patent Office declined to file the application, inasmuch as the drawing was informal and irregular. The Patent Office made a drawing from the specification and drawing prepared by Mr. Brown as it was understood at the Patent Office, and this drawing remained in the application for nearly a year and a half, when it was discovered by the applicants for the patent that the drawing was not complete and not an exact disclosure of their invention, whereupon they called upon the Patent Office to correct the drawing to agree with their original specification and claims. The applicants forwarded to the Patent Office a photograph of what is known as Exhibit 35, which was prepared by the applicants themselves and given to or shown to Mr. Brown. The Patent Office then proceeded to correct the drawing in accordance with the original specification and claims

as shown by Exhibit 35, and that drawing was incorporated in the application and forms a part of the patent as issued, and, so far as this court can see, it discloses nothing additional to the structure of Exhibit 35 as described in the original specification and claims. Certain specifications and claims as originally filed were somewhat changed, and some of the claims were canceled at the suggestion of the Patent Office, for the reason they did not conform to the drawing which the Patent Office made in the first instance. At a later time when the correct drawing was made by the Patent Office and filed with the application, certain claims which had been erased to conform to the incorrect drawing were not restored or reincorporated in the patent as originally issued, and as a result, and for the purpose of correcting this confusion, the reissue application was filed and the specifications were amended.

It seems to this court clear that the reissue application was filed for the purpose of obtaining the actual invention made by the Hinmans and disclosed in Exhibit 35, and does not go beyond it or beyond the drawings of the original patent. Clearly, there was no unreasonable delay on the part of the patentees in their effort to bring order out of this confusion and make the application, specifications, and drawings conform to the actual invention and disclosure made. It was no fault of the patentees that Mr. Brown was not skilled in making patent drawings or framing specifications and claims, and they ought not to be deprived of the benefit of their actual invention fairly disclosed and presented to the Patent Office as long as there are no intervening rights demanding protection. It is, of course, true and settled law that the reissued letters patent must be for the same invention disclosed in the original application. This does not mean that the specifications must read the same, or that the claims must be identical. If this were true, there would be no object in procuring a reissue.

[2] The defendant insists that there was a fatal mistake or omission in the drawing as originally filed, and that this makes the claims 18 and 19 of the patent invalid, for the reason that the Patent Office thereafter corrected the drawing, and that this was not allowable. It seems to this court clear that the Patent Office had the right, and that it was its duty, under the circumstances, to correct the drawing and make it accord with the actual invention of the applicants as shown by the photograph of the original device, and that when this was finally done it had the right to allow the claims for the original and actual invention.

I am led to the conclusion that the reissued letters patent have not been unduly expanded, and that same are valid.

On the question of infringement, it seems clear that the defendant's device infringes. It embodies a valveless inlet and a valveless unobstructed air exit, and, in fact, is a substantial copy or reproduction of the complainants' device. It differs in the exhaust valve, in that there is substituted a counterweighted valve which in the judgment of this court is the equivalent of that of complainants' device. There is nothing in the specifications or claims of the reissued letters patent which confines the complainants to the specific valve shown. In both

cases, the milk flows out when the suction combined with air pressure is removed which holds the valve closed. In complainants' structure, this valve drops down or closes of its own weight, being hinged to the exterior of the chamber. In defendant's device this chamber is not curved, but it is open at the lower end and closed by a valve hinged to the exterior of the chamber, and this is closed by a counterweight or long arm, which, operating on its hinge, also closes of its own weight taken as a whole. The one is the equivalent of the other, and in all other respects except the shape of the chamber the one is a substantial duplicate of the other. There are some minor but immaterial differences in the location of parts, but it is clear that they operate on the same principle, in obedience to the same laws and to produce the same result. The complainants' device has been commercially successful, and it is noteworthy that, if we take the cap portion of defendant's device from the milk chamber, we may attach it to the milk chamber of complainants' device, and they will operate the same and may be attached to the pail in the same mode and manner. Both devices are designed to be attached to a milk pail and to be used in a rigid upright position, and in both it is intended and designed that the outlet valve shall automatically operate to alternately render the valve chamber air-tight and to discharge milk into a pail at normal atmospheric pressure. It may be well to note that in both cases the discharge valve of the milk chamber is tightly closed by the suction or exhaust of air from the milk chamber. This is done by the pump. When the suction is released, the milk opens the valve and is discharged.

Much has been said regarding claim 11 of the original patent and claim 11 of the reissue. Claim 11 of the original patent reads as follows:

"In a milking apparatus a milk chamber having a valveless inlet and a substantially air-tight valved outlet closed by gravity, and means for exhausting the air from said chamber."

The claim will mean the same and be for the same combination if we make it read:

"In a milking apparatus a milk chamber having a valveless inlet and means for exhausting the air from said chamber and a substantially air-tight valved outlet closed by gravity."

Claim 11 of the reissue reads as follows:

"In a cow-milking apparatus, a milk chamber having a valveless inlet, means for exhausting air from the chamber and a substantially air-tight valved outlet closed by gravity and the exhaust of air from said chamber."

It is contended, on the one hand, that this is an undue expansion of the claim, while, on the other hand, it is contended that this change is a narrowing in the reissue. In the original claim we have "a substantially air-tight valved outlet closed by gravity," while in the reissue we have in the same claim and combination "a substantially air-tight valved outlet closed by gravity and the exhaust of air from said chamber." In both, this air or valved outlet is closed by gravity; that is, the valve closes and remains closed by gravity. It is held

closed by gravity and the exhaust of air from the chamber causing a vacuum to a degree and an air pressure from the outside. The outlet is closed by the valve which closes by gravity and is held closed by gravity and exhaust of air from the chamber. This court cannot see any difference in the two claims when read in connection with the drawings and specifications, and fails to discover any undue expansion or broadening of the claim. If there be any difference, the reissue narrows the claim.

This court has some doubt of the validity of claim 19 of the reissue, which calls for:

"In a cow-milking apparatus, a milk chamber comprising two separate removably connected members having parts adapted to be normally spaced for receiving between them the cover of a milk receptacle, a milk inlet, an air exhaust connection, and a valved outlet."

The original patent has no claim which calls for a combination of connected members "having parts adapted to be normally spaced for receiving between them the cover of a milk receptacle." But I think that the original drawings and specifications show this feature, and that, even if omitted in the claims of the original patent, it was perfectly competent and proper to embrace this feature in the added and amended claims of the reissue.

[3] The claims in issue here and relied upon by the complainants are not limited at all to the tangential feature of the original or reissued patent, and no discussion on that subject is necessary or proper. It is plain, however, that defendant's structure is so arranged and constructed purposely as to secure all the benefits of this tangential construction or feature. There is a mere change of construction, and in this regard the one is the equivalent of the other. It is a mere change of form. On the trial the defendant claimed that its structure did not embody this beneficial feature. It is clear, of course, that in defendant's structure the milk is not discharged into the milk chamber tangentially as it is in complainants' device; but, even if defendant's is not as good as complainants' in this particular respect, it is an equivalent or substantial equivalent by change of form, and the object of this change is to bring about the same result. A patent cannot be evaded or infringement avoided by a construction which is substantially the same, and which operates on the same principle, but which is inferior in its operation and produces an inferior result.

As to the defense that the claims of the reissued letters patent are wholly or substantially anticipated by the prior art patents and define nothing more than old and well-known details shown by many prior patents to have been old and well-known, it is proper to say: This court has been over the prior art with great care and interest. Nothing is found which anticipates or shows want of patentable invention. The commercial success of the complainants' device shows its superiority. The infringement by defendant, that is, the copy, close imitation, shows merit and is evidence of patentable novelty. Why is it that the defendant so closely imitates and copies the complainants' device? But this is not conclusive. Both complainants and defendant had the right to follow and copy and use and improve upon the prior

art. Either has the right to copy or follow the prior art without infringing upon the rights of the other. The patent in suit assumes to be an improvement and in some respects a pioneer. In the specific improvements claimed, this court is of the opinion that the reissued letters patent in suit are a patentable advance and improvement upon the prior art, and that the Hinmans were first in the field, and that their patent discloses patentable invention and is valid as to each and all the claims relied upon. The defendant's expert states, in substance, that the patent to Condrom, No. 655,200, is in his opinion the best reference as showing anticipation, etc. By no possibility can this Condrom patent anticipate any claim in issue here, unless it be claims 20 and 21. The Condrom patent differs essentially from the patent in suit in several respects, and is a different combination and operates in a different way, and clearly does not produce the same or substantially the same results. True, it has a milk chamber and valveless milk inlets and a milk outlet provided with a suction closed valve. But this valve is not normally closed. It is normally open. The Condrom patent also has a suction connection leading to a pump. However, the teat cups form a part of the receiver, and because of the construction only partially described suction is not applied to the teats of the cow gradually as the vacuum is created and each cup separately communicates with the receiver. The valve for the discharge of the milk remains in the aperture and in a pipe leading therefrom which makes the structure unsanitary and I think inoperative. There are many defects in this Condrom patent which forbid its being considered as an anticipation of the patent in suit.

I do not regard it necessary to go through and describe the Colvin patent, No. 28,455 or the Shiels patent, No. 513,625, or the Weber patent, No. 680,952, or the Jacques patent, No. 870,785, or the Peik & Lehman patent, No. 995,804, or the Delaney & Holtzbauer patent, No. 1,021,570, or the Roberts patent, No. 1,074,206, or the Uevler patent, No. 1,112,949, or the Hinman patent, No. 907,236, as neither is an anticipation, and, take them altogether with others as showing the prior art, I do not think the ordinary mechanic skilled in the art with those devices before him would have constructed the device shown in complainants' patent sued upon. This is the neatest, most operative, and most sanitary of all, and shows a marked and patentable improvement on the prior art. It is to be regretted, of course, that errors were made and crude drawings and specifications submitted in the first instance; but it is apparent that the Patent Office recognized the merit of the Hinmans' invention and did what it reasonably could to aid in giving to the patentees the benefit of the invention. In my judgment justice requires that this court should refuse to deny relief to the complainants on mere technical grounds which do not go to the real merits of the controversy and which are not fatal as matter of law. Clearly, there was no laches in applying for the reissue, and I therefore hold that the reissued letters patent sued upon were applied for in due time and duly reissued; that it contains no "new matter" within the meaning of the statute and decisions not disclosed in the original patent or application upon which it issued;

that there are no intervening rights which defeat the complainants; that patentable invention is disclosed; that the claims are not anticipated; and that infringement is clearly shown.

The complainants are entitled to a decree accordingly, with costs.