<hr />

### STARCH BROS. CO. v. HINMAN et al.

(Circuit Court of Appeals, Seventh Circuit. April 19, 1919.)

#### No. 2572.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—COW MILKING APPARATUS.

  The Hinman reissue patent, No. 13,876 (original No. 1,097,803), for a cow milking apparatus, *held* within the scope of the original patent, not anticipated, valid, and infringed.

Appeal from the District Court of the United States for the Western District of Wisconsin.

Suit by Arthur V. Hinman, Ralph L. Hinman, and the Hinman Milking Machine Company, against the Starch Brothers Company. Decree for complainants, and defendant appeals. Affirmed.

For opinion below, see 247 Fed. 346.

The appeal is from a decree of the District Court finding valid and infringed four claims of appellees' reissue patent No. 13,876 for improvements in cow milking machines. The patent deals with that part of the machine into which the milk is drawn by means of a vacuum formed therein by the exhaust of air therefrom, and out of which the milk flows at atmospheric pressure into a pail or other receptacle therefor. The following figure 6 of the patent shows the device:

FIG. 6.

*S* is the body of the device, called by the patentee the "milk chamber." It is separable at *d-e* for convenient insertion through an opening in the top of a pail, then screwing the parts together for the rigid holding of the device while in use, and for ready separation and removal for cleaning. *D* is a tube extending through the top and into the chamber, with upward extending nipple for hose attachment to the means for exhausting air from the milk chamber, and *E* is the milk inlet with outward nipple for hose attachment to the means, usually called "teat cups," for connecting with the teats of the cow. This inlet enters at *O* on a tangent to the circumference of the chamber. *F* is the outlet valve with hinged attachment outside of the chamber at *H* by means of the arm *T*, which loosely holds the metal disk which constitutes the valve. This outlet valve is set at the angle shown in the figure so that it is normally closed by gravity, but in operation the closing is assisted by the suction from the air chamber. The weight of the milk in the chamber causes the outlet valve to open, and as the accumulated milk flows out a sufficient quantity of

<hr />

air enters at the opening and before the valve again closes, to release the vacuum in the chamber and the suction on the teat cups produced by the drawing of air and milk through the milk inlet. This helps to produce the pulsating effect or the alternating sucking and release of the teats necessary in the process of milking.

The claims of which infringement is charged are:

"11. In a cow milking apparatus, a milk chamber having a valveless inlet, means for exhausting air from the chamber and a substantially air tight valved outlet closed by gravity and the exhaust of air from said chamber.

"12. In a cow milking apparatus, a milk chamber having a valveless milk inlet, an air exhaust connection, a milk outlet and an outlet valve positioned outside said chamber and closed by gravity and the exhaust of air from said chamber."

"16. In a cow milking apparatus, a milk chamber having a milk inlet in substantially continuous communication with said chamber during the milking operation, a milk outlet and a valve for said outlet, said valve supported by means located entirely outside the milk chamber.

"17. In a cow milking apparatus, a milk chamber having a milk inlet, an air exhaust connection, a milk outlet, a valve for said outlet, said valve supported by means located outside the milk chamber and adapted to discharge milk into a receptacle at substantially normal atmospheric pressure."

Fred Gerlach, of Chicago, Ill., for appellant.

Eugene A. Thompson, for appellees.

Before BAKER and ALSCHULER, Circuit Judges, and LANDIS, District Judge.

ALSCHULER, Circuit Judge (after stating the facts as above). Appellant contends that these claims are for a different invention than is disclosed by, or is within the purview of, patent No. 1,097-803, 1914, of which that here involved is the reissue. We find no merit in this contention. The difference in the four claims is not so much in substance as in the breadth of the claims. They cover the same invention. Claims 12, 16, and 17 are new with the reissue, but claim 11 was one of the original claims, save that in the reissue there is added to it the clause "and the exhaust of air from said chamber," which does not materially change the scope of the claim. Claims 1 and 11 of the original patent sufficiently indicate to us that the patentees there intended and undertook to claim the invention here in issue, and that the more amplified claims of the reissue were fully justified upon the prior disclosure and claims.

The invalidity of the claims is asserted on various prior patent grants. With the possible exception of Peik & Lehman 995,804, June 20, 1911, we find that none of them show the combination of these claims, and are not in the prior art. This was also the conclusion of the District Court and Circuit Court of Appeals of the Second Circuit in passing upon the same question, save that they considered Peik & Lehman in the same category with the other prior art citations. Hinman v. Visible Milker Co. (D. C.) 231 Fed. 174; Id., 153 C. C. A. 24, 239 Fed. 896.

Although the operation of Peik & Lehman is somewhat different, the claims in question are readable thereon, provided its inlet valve having an air hole as in the alleged infringing structure be considered as the equivalent of the valveless inlet. The Peik & Lehman patent

date being within two years of the Hinmans' application, it was open to Hinmans to show invention prior to Peik & Lehman. This they undertook to do through a device in evidence which they said they made some years before, which showed all the elements of the claims in suit and which they testified worked well. The District Court found that this was a reduction to practice by Hinmans antedating Peik & Lehman. In the New York suit no attempt was made to carry back the Hinmans' invention date.

While we would have much hesitancy in excluding Peik & Lehman as an anticipation of these claims, we are satisfied that under the record here the District Court reached the proper conclusion in finding that Hinmans' invention antedated Peik & Lehman. It is true they did not for a long time proceed with the manufacture of the device they so invented, and made a different article under their first patent. But the evidence established that the device shown was used by them long enough to prove that it was practicable and useful, although they themselves may not at the time have fully appreciated its utility. It does not appear to have been publicly disclosed or abandoned to the public, and the District Court properly concluded it disposed of Peik & Lehman as a prior patent disclosure.

Noninfringement is also strenuously insisted upon. Under the original patent appellees made and sold many of their devices made in accordance with the teachings of the original and reissue patents. Prior to the reissue appellant began to make milking machines in which the chamber part was a literal reproduction of the Hinman device. After the granting of the reissue, upon notice they ceased doing this, and proceeded to make a milking machine, the chamber of which was an upright cylinder closed at the top, through which entered two unobstructed tubes, one for the air exhaust and one for the milk inlet, the outlet at the bottom being closed by a downwardly opening disk valve operated by means of a small arm attached at one end to the under side of the disk, and at about its middle hinged on the lower outward edge of the chamber, holding the disk which thus constituted the outlet valve in normal closed position by means of a counterweight at the outer end of the arm.

Upon further complaint and notice by the Hinmans, appellant discontinued putting out this device, or rather changed it by placing the milk inlet on the side and near the upper edge of the cylindrical chamber, and putting in the discharge end of the inlet a hinged disk valve held normally closed by its own weight, opening into the chamber by means of the pump suction and the weight of the inflowing milk. This contest has to do mainly if not entirely with the structure last described.

A valved inlet would escape claims 11 and 12, one element of which is a valveless inlet, and claim 16 which specifies "a milk inlet in substantially continuous communication with said chamber during the milking operation." It appears, however, that this valve is not a complete valve designed as nearly as possible to be air-tight, but has a hole in it through which the air passes for facilitating the release of the vacuum on the teat side of the inlet, and whereby there is present

not only the "substantially continuous communication with said chamber" as specified in claim 16, but also substantially the same effect as would result from the entire absence of the valve, as provided in claims 11 and 12. Indeed, it may be said that, to the extent that this so-called valve is designed to permit the passage of air through it when it is closed, it is not a valve at all. But the device clearly falls within the broader scope of claim 17, the elements in the combination of which are, a milk chamber with milk inlet, air exhaust connection, and a valved milk outlet with the valve supported outside the milk chamber, adapted to discharge milk therefrom at normal atmospheric pressure.

The valveless milk inlet to a milk chamber in such a machine is not new with this Hinman patent. Not to mention a number of other prior patents, it is to be found in an earlier patent to Hinmans, No. 907,236, December 22, 1908, of which the reissue patent purports to be an improvement. Indeed, appellees are not contending that the valveless inlet is the invention of the patent in issue, but it is the combination of such inlet with the other elements of the respective claims that constitutes the invention of the claims; and, the other elements being plainly present in appellant's device, they contend with much reason that the hole in appellant's inlet valve is but a colorable evasion of the valveless inlet feature of claims 11 and 12.

We are satisfied that the District Court made proper disposition of the cause, and the decree is affirmed.